# WAECHTER BROS. CO. v. STEVENS et al.

No. 2909.

Fourth Division.

May 1, 1929.

92

John A. Clark, and Charles E. Taylor, both of Fairbanks, for plaintiff.

Morton E. Stevens, of Fairbanks, for defendants Morton E. Stevens and J. Fred Struthers.

Thomas B. Drayton, of Fairbanks, for defendant Fred D. Crane.

CLEGG, District Judge.

The testimony and evidence introduced on the trial shows no transfer or assignment or conveyance to the defendants Stevens and Crane of any property save and except the Buick automobile and Struthers' interest in the mining property, hydraulic mining plant, equipment, and buildings and

provisions, and his one-third interest in the lease thereon and royalties to be derived therefrom.

The facts developed on the trial show that Struthers had been employed by the plaintiff company in 1918, continuing therein until 1926, as local manager and agent of their meat market and meat produce business in Fairbanks, in which capacity he acted as bookkeeper and custodian of the cash and books of the concern. In April, 1926, the witness Davis Runyan, an expert accountant, in behalf of the company, examined the company's books and affairs in Fairbanks, confronted the defendant Struthers, and announced to him that he was short in his accounts with the company in a sum over $30,000 cash.

Struthers employed Crane as attorney about the 21st of April, 1926, by stating to Crane that he was in serious trouble and that he required his services, and thereafter it was agreed between Struthers and Crane that Struthers would deliver to him his Buick automobile immediately in return for his legal services in defending him against any charges preferred by Waechter Bros. Company on account of the alleged defalcations of Struthers, and the automobile was thereafter delivered by Struthers and accepted by Crane in lieu of a cash fee of $1,500.

Between the 21st day of April and the 6th day of May, 1926, Runyan and John A. Clark, attorney for the company, had several interviews with Crane, as attorney for Struthers, and with Struthers and Crane, looking to an immediate settlement by Struthers with the company for the amount of the shortage claimed by Runyan for the company. In these interviews and conferences it was agreed between Struthers and Crane on the one hand and Runyan and Clark on the other that the defalcation of Struthers to the amount of $30,000 and over would be made good by Struthers by transferring and delivering to the company all his certificates of stock he then owned, described in the complaint herein, and a sum of not less than $5,000 in cash, most of which Struthers stated he could secure from F. S. Gordon as money due him from

Gordon on promissory notes, and by conveying to one Charles G. Lewis, as trustee, all the interest of Struthers in the Palmer creek placer mining property, the proceeds from the mining operations on which it was agreed between Struthers and Crane and the company through its representatives should be devoted to the payment of the balance due from Struthers after the application of the value of the stock certificates and cash agreed to be paid on the total indebtedness of Struthers of $30,000 or more. From time to time after this agreement various excuses for delay were advanced by the defendant Crane, acting for Struthers, to Runyan and Clark, and the same were agreed to by the latter until about the 6th day of May, 1926, when it became apparent to them that neither Struthers nor Crane were acting in good faith in fulfilling their part of the negotiations for settlement by Struthers of his defalcation. They had received no property or cash, and on the 7th day of May, 1926, the United States of America filed a complaint against Struthers in the commissioner's court at Fairbanks charging embezzlement from the company, and, on the 13th day of May, 1926, filed an additional complaint on the same charge against Struthers in the same court.

In the negotiations between Struthers and his attorney, Crane, and Runyan and Clark, attorney for the plaintiff company, Struthers, in the presence of Crane, had stated that Runyan, in investigating the books of the company, had found all the accounts in which there was a shortage as they were recited to him by attorney John A. Clark, and stated that it was useless for Runyan to look or investigate any further, and Crane had stated in the presence of Struthers and Runyan that the amount of Struthers' shortage was nearer $40,000 than $30,000.

Immediately prior to the preliminary examination held by the commissioner on the first embezzlement charge against Struthers, Crane and Struthers employed Morton E. Stevens to assist in the defense of Struthers and to conduct the cross-examination. He did so, and also rep-

resented Struthers and assisted Crane at the second preliminary examination which was held on the 17th of May, 1926. These two attorneys afterwards represented Struthers on trial in the District Court on an indictment charging embezzlement in February, 1927, which resulted in a conviction by a verdict of a jury, thereafter set aside, and a new trial granted. They also represented him on the new trial in February, 1928, in which Struthers was again convicted and sentenced to the penitentiary. They secured the dismissal of other indictments against Struthers on the same charge. They represented Struthers in the action by the company for debt, making a formal defense, in which judgment was secured against Struthers for the sum of $30,809.79, on the 31st day of July, 1928. No appeals or writs of error were taken, and no legal services were performed by Stevens and Crane except in the commissioner's court and trial court.

On the 15th day of May, 1926, after the arrest of Struthers upon the second charge of embezzlement, and following the institution of the action for debt to recover the sum of over $30,000 against Struthers by the company, Struthers made, executed, and delivered to Stevens and Crane a deed purporting to convey to them all of his interest in and to the placer mining association claims above mentioned on Palmer creek in the Fairbanks recording district, to wit, an undivided seven-twentieths interest therein, and including all ditches and water rights thereunto belonging, as well as an undivided one-third interest in the lease heretofore mentioned on said property, and the same interest in all personal property, including a hydraulic mining plant, tools, machinery, flumes, sluice boxes, and so forth. The consideration expressed in said deed is ·as follows: "For and in consideration of the sum of $1.00 and other valuable considerations paid by the parties of the second part to the party of the first part, the receipt whereof is hereby confessed and acknowledged." This deed was made pursuant to an agreement made between Struthers and Stevens and Crane entered into on the evening of

the 14th day of May, 1926, at which time it is claimed by Stevens in his testimony it was also agreed between Crane and Stevens that Stevens should receive from Crane a bill of sale for an undivided one-half interest in the Buick automobile theretofore transferred to Crane by Struthers at the time of Crane's employment.

It further appears from the testimony that, at the time of the execution of this deed, Struthers held in his own name no property susceptible of attachment other than that attempted to be conveyed by said deed, and that all the property which Struthers held at the time of the discovery of his defalcations by the company, other than the property attempted to be conveyed by this deed, and which had been promised and agreed to be conveyed to the company to be applied towards making good the amount of Struthers' peculations, including the cash derivable from Gordon, had been clandestinely secreted and placed out of the reach of the company as a pursuing creditor by Struthers during the time when he was ostensibly willing to hand it over to the company, but he, in truth and in fact, with the connivance of his attorney, Crane, was making use of the time gained by the delay in consummating the agreed settlement to place all of that property under cover and beyond the grasp of the company by legal process.

When, on the 13th of May, 1926, the company instituted the action against Struthers for the recovery of the money embezzled, the evidence shows that the stock of the Healy River Coal Corporation had been returned by McMichael to Struthers and its location could not be found. Struthers' certificates of stock in the Fairbanks Airplane Corporation could not be found. No money could be attached, although he had received at least $1,600 from F. S. Gordon after his negotiations for settlement with the company had been commenced and $1,400 from the safe of Oscar Weber. Moneys due from Gordon on the two notes mentioned heretofore was claimed by Gordon, with the acquiescence of Struthers, Stevens, and Crane, to be no longer due to Struthers but to others to whom the notes

were alleged to have been assigned, and the only property that had not theretofore been alienated or claimed to have been alienated on the 14th day of May, 1926, was Struthers' interest in the Palmer creek mining claims, the lease thereon, and ditches and personal property connected therewith.

On the trial, the only defendant appearing in person and testifying was Morton E. Stevens. Excerpts from his testimony appear later.

The court finds it difficult to characterize properly the chicanery and double dealing which the record discloses on the part of Struthers and Crane in this transaction. Struthers, a self-confessed criminal, who had embezzled over $30,000 while occupying a position of trust and confidence from the company for a long period of time, had amassed considerable property as a result of his embezzlements, and employed Crane in the first instance to represent him in any contemplated criminal actions preferred by the company against him and also 'for the purpose of procuring a settlement out of court of the demands made by the company against him with the view of recouping' their losses. Struthers knew and confessed the accounts of customers as shown on the books from which he had enriched himself at the company's expense, and Crane knew this to be true, and expressed himself to the effect that the demand of the company against Struthers was scarcely large enough, that it should be more like $40,000 than $30,000. Together they pretended to the company's representatives that they would voluntarily surrender the property owned by Struthers in an effort to make up the admitted losses of the company, and, while these negotiations were pending deliberately and knowingly and with the sole purpose and intention of defrauding the company, they secreted or transferred all the personal property which Struthers owned, leaving in his name on May 15, 1926, only the mining property which Crane and his associate Stevens finally had Struthers transfer to themselves in

the guise of an attorneys' fee for services rendered and to be rendered in any and all courts.

Not a word of testimony is offered by the defense to explain what became of the interest of the stocks owned by Struthers in the Fairbanks Airplane Company and the Healy River Coal Corporation, or of the money in the possession of Struthers at the time of the negotiations for settlement, or of the money that he received from Gordon at that time, or as to the consideration for the alleged assignment of the promissory note due to Struthers from F. S. Gordon on which there was a balance due of $4,871, claimed by Gordon to be owned by Struthers at the time of the service of the writ of garnishment in behalf of the company in the attachment action and later claimed by Gordon to have been assigned by Struthers to Shonbeck, or as to the alleged assignment from Struthers of the second note for a smaller amount due by Gordon to Struthers to a person outside the territory, and, if the disposition of all of this property was bona fide and' for valuable consideration and not a mere subterfuge to prevent the company from securing a lien thereon by any attachment action, it was easily possible for the defendants to produce the proof thereof in this suit and to satisfy the court that the disposition by Struthers of this property was made honestly and legitimately and in the ordinary course of business.

■ In the presentation of their defense in this case, there is a total lack of that candor on the part of defendants which is essential to a proper and adequate defense in equity. No full discovery of essential facts is attempted to be made. The defendants must be held to the natural and legal inference of intentional fraud from the facts proven by plaintiff and the absence of a full explanation by defendants of the necessity which caused Struthers to divest himself of all his assets following the announced revelations of his delinquencies as agent and bookkeeper for the plaintiff company in the short space of three weeks—to be precise, between April 21, 1926,

and May 15, 1926—thus reducing himself in such a scant period of time from wealth and affluence to insolvency.

Under such circumstances, the law places the burden on Morton E. Stevens, as the only defendant appearing in person to testify as to the bona fides of the transaction involving the conveyance of mining property to him and Crane by Struthers on May 15, 1926, to satisfy the court by a fair preponderance of the evidence that the deed and conveyance in question was made in the manner claimed by his answer in this case and in his testimony; that is to say, that it was made in good faith and for a valuable consideration. He failed to do this.

At the outset I will apply the rule that evidence is to be estimated not only by its own intrinsic weight but also according to the evidence which is within the power of one side to produce and of the other to contradict, and therefore, if the weaker and less satisfactory evidence is offered when stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust.

It is impossible for the witness and defendant Stevens to isolate himself from his associate Crane in this transaction as attempted on the trial. The testimony of Crane was material testimony for Stevens to produce, and, having failed to do so, the court will view his testimony with caution, considering in that connection the intimate and confidential relations ordinarily existing between associate attorneys, and not shown to be otherwise in this case. Stevens was employed, according to his own testimony, by Crane and Struthers, after the first arrest of Struthers and before his preliminary examination on that charge, and it must have become apparent to Stevens from the testimony in that case that the claimed peculations of Struthers reached a staggering amount. He asserts that he accepted the employment and went into the preliminary examination without making any arrangement with reference to his own compensation, nor did he afterwards, for

the reason that the grand jury in this division would not meet again for almost a year, according to custom, and it did not appear to him that he should insist on making an agreement for his compensation as an attorney. However, a little more than a week later, when the second charge was preferred against Struthers and he was rearrested, he stated to Crane, "What do you mean by getting me into this case without making arrangements for my compensation?" At the time of Struthers' second arrest on the 14th of May, 1926, a week after his first arrest, the grand jury in this division was in no more danger of convening hastily than it was a week prior. The great haste on the 14th of May in making arrangement for his compensation was due to the fact that the day previous the company had instituted a civil action against Struthers for over $30,000, and had issued a writ of attachment and levied it everywhere in the town of Fairbanks where it was thought some property of Struthers still might remain. And the same haste was exhibited on the 15th day of May, 1926, in having the deed and conveyance in question executed by Struthers and immediately recorded.

In speaking of the information that Crane gave to him with reference to the transfer by Struthers to Crane of the Buick automobile, Mr. Stevens testified that Crane stated "that he had been given the Struthers' Buick automobile and that he had received that automobile on account of his attorney fee in the matter." The use of the words "on account" should have suggested to Stevens the advisability of inquiring whether it was part payment or full payment. No further explanation is made by Stevens of the use of these words by Crane, and it is just as reasonable to infer from their use that Crane meant that the automobile had been given to him in full payment for his services as it would be to say that it meant partial payment, and the evidence on the part of the plaintiff is conclusive that it was in full payment for his services. The automobile was worth at least $1,500, and was turned in on a trade by Stevens two years later at a valuation of

$800, and the sum of $1,500 or its equivalent was ample compensation for Crane as the attorney of Struthers for any services he performed for Struthers throughout his employment.

Stevens further testified, "I inquired of Mr. Crane what else he expected from Mr. Struthers and he informed me that Mr. Struthers and himself had not arranged for any fee excepting this automobile matter." It is clear that Mr. Crane at that time expected nothing further from Mr. Struthers in the way of a fee, or he would not have answered Mr. Stevens in this manner. He would have stated that he expected something else if such had been the case.

Mr. Stevens further testifies, "I believe it was my suggestion that if I went on with the case, why Mr. Struthers should put up at least $4,000.00 cash money at that time." Later on Stevens testifies that he told Struthers when he next saw him after this conversation with Crane that Struthers would have to put up $2,000 a piece; that is, $2,000 for himself and $2,000 for Crane. Just why, when it was a question of payment by Struthers to Stevens on condition that he (Stevens) went on with the case, Stevens should demand $2,000 for Crane at the same time as he demanded $2,000 for himself from Struthers, is not apparent.

According to the testimony of Stevens, the deed and conveyance in question was suggested by Struthers, who informed him that he had no money, and that his (Struthers') interest in the mining property would be amply sufficient to pay an attorney fee, and that he stated he wanted Stevens' services and the services of Crane, and that he would make them a deed to all of his interest in the mining property in full payment. This, according to the witness Stevens, was done in the absence of Crane, but later the same evening Stevens and Crane accepted the suggestion of Struthers and agreed to accept the property in full payment of their attorneys' fee. The testimony of Stevens on this point does not disclose that Struthers made any suggestion or mention of transferring the lease upon the min-

ing property, etc., although he stated that Struthers said he owned an undivided one-third interest in the lease, or that Struthers told him that he had expended in advancements to the copartnership at least $14,000 cash, and that each of the other partners had expended a like amount, or that the property had produced any gold, or that the two members of the partnership outside of Struthers were working partners who actually worked the ground personally, and, if Mr. Stevens' statement is correct, he made a mere superficial inquiry before accepting Struthers' offer as to the value of the property he and Crane were about to accept as compensation for their attorneys' fee.

It becomes pertinent at this juncture to inquire what effort Mr. Stevens made during his conversation with Struthers on this subject to inform himself whether or not Struthers had any other property besides mining property which might be more readily converted into cash, such as stock certificates or notes or any other tangible personal property. The evidence discloses that no such effort was made, and the inference is irresistible, in the absence of any testimony on this point, that some vague knowledge at least must have actuated Stevens in confining his discussions with Struthers, relative to a fee, to Struthers' interest in the mining property alone. The only conclusion the court can arrive at from Stevens' testimony is that he intentionally shut his eyes in the ascertainment of knowledge as to the transactions occurring between his client Struthers and the company prior to his employment and afterwards, as to the condition of Struthers' resources on the 14th and 15th of May, 1926, and as to any disposition theretofore made by Struthers of property other than his mining property, and that, by ordinary diligence and inquiry, he could have learned from Struthers or Crane that, prior to the time of the execution of the deed in question, Struthers had secreted or transferred safe from the processes of the law, for the purpose and with the intention of defrauding the plaintiff company, all personal property, and that, in attempting to transfer his mining property hastily

and in bulk, the same purpose and intention actuated him, so that his accusers might receive no financial benefit by discovering and exposing his criminality.

Stevens admits he had knowledge of the institution of the civil action by the company against Struthers to recover $30,000 or more, and he could not have failed to know, or at least surmise, that, if his client's statements with reference to the value of the mining property conveyed by the deed in question were true, even though discounted materially, the value of the property was largely in excess of a reasonable attorneys' fee, to say nothing of the value of the Buick automobile, and that the consideration for the deed as expressed therein was not the true consideration, and that equity and good conscience under all the circumstances would require a true statement in the deed itself of the alleged consideration to overcome the presumption of fraud, and that, if the transaction was honorable and in good faith and not fraudulent, a mortgage of the property, or part of it, would have been as effective as a deed.

The court holds that the deed in question was made in bad faith and without consideration, that it was executed by Struthers, with the knowledge of Crane, for the sole purpose and with the intention of delaying and defrauding the company, and that, if Stevens did not have actual knowledge of such purpose, he could have readily ascertained the same by reasonable inquiry. The deed is therefore void as to both grantees, and all the property described therein and sought to be conveyed is subject to the lien of plaintiff in the attachment suit.

Findings of fact and conclusions of law and decree in favor of the plaintiff may be prepared accordingly.